UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

IRA JEREL THOMAS, )
)
    Plaintiff, )
) No. 0:26-CV-8-REW-EBA
v. )
)
UNITED STATES OF AMERICA and ) OPINION & ORDER
UNITED STATES BUREAU OF PRISONS, )
)
    Defendants. )

*** *** *** ***

Plaintiff Ira Jerel Thomas brings two claims under the Federal Tort Claims Act ("FTCA").

*See* DE 20 ¶¶ 20–24.  Recently, the United States filed a motion for judgment on the pleadings or,

in the alternative, summary judgment.  *See* DE 43.  The United States contends that Count I of the

amended complaint fails because it is barred by the applicable statute of limitations, *see* DE 43-1

at 6–10, and Count II of the amended complaint fails because Plaintiff cannot prove that the United

States's agents assaulted him, *see id.* at 10–16.  Plaintiff, through counsel, opposes the motion.

*See* DE 50.  For the reasons stated below, the Court GRANTS DE 43 in part.

I.       BACKGROUND

On February 10, 2024, Plaintiff initiated the instant action in federal court.  *See* DE 1.  Soon

after, he filed his first amended complaint, bringing a total of five claims.[1]  *See* DE 20.  The United

States then filed a motion to dismiss.  *See* DE 22.  While addressing that motion, the Court

summarized the alleged facts of this matter as follows:

---

[1] Although Plaintiff later sought leave to file a second amended complaint, *see* DE 26, the Court denied that
amendment as futile, *see* DE 32 at 2–5.

> Plaintiff Ira Jerel Thomas files suit . . . for claims arising out of two incidents that occurred while he was incarcerated at USP Big Sandy in Inez, Kentucky. After filing his initial complaint, Thomas filed an amended complaint.
>
> Thomas alleges that in December 2021, after prison guards intervened in a fight, they handcuffed inmates (including Thomas) in the prison yard and placed them on the ground. It began to rain, causing the ground to become wet. In reaction, Thomas asked a guard, "[W]hy do you have us laying[] in the rain[] and in this goose [feces?] [T]hat's not right." According to Thomas, the guard then grabbed him and took him to Lieutenant Melvin's office. While in the office, Melvin allegedly told Thomas, "[Y]ou always want to talk shit." Thomas responded that he "just asked why did they have us laying on the wet ground in [goose feces]." Thomas claims that at some point afterward, four or five prison guards kicked, punched, and beat him, causing him to sustain injuries. According to Thomas, the guards retaliated against him for criticizing their actions. Thomas states that the guard[s] performed these actions "within the scope of their employment" in order "to quell prison fights, riots, and prison uprisings," and deter criticism.
>
> Around January 28, 2022, after exchanging "words" with a prison guard, Thomas claims that more guards came to his cell while he was asleep, woke him up, and "brutally" beat him. He alleges that the guards assaulted him "while working within the scope of their employment" in reaction to him "exercising his First Amendment Rights." His injuries were severe enough to render him unconscious and warrant transfer to a local hospital. An extended treatment period ensued.
>
> Thomas brings two claims pursuant to the [FTCA]: Count I (based on the December 2021 assault) and Count II (based on the January 2022 assault). . . .

DE 32 at 1–2 (internal citations omitted).

The Court dismissed the last three counts of the amended complaint, which were improvidently brought under 42 U.S.C. § 1983. *See id.* at 6. However, the Court preserved Count I and Count II, finding that there was a disputed question of fact as to whether the guards "subjectively intended to further BOP objectives" by committing the alleged assaults and batteries against Plaintiff. *See id.* at 8–9.

After conducting discovery, the United States filed the instant motion seeking judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, in the alternative, summary

judgment.  *See* DE 43.  With respect to Count I, the United States asserts that the December 2021 assault actually occurred, if at all, on May 20, 2020, rendering the claim untimely under the applicable statute of limitations.  *See* DE 43-1 at 6–10.  And with respect to Count II, the United States contends that Plaintiff's cellmate, not BOP staff members, committed the January 2022 assault.  *See id.* at 10–16.  In response, Plaintiff cites his deposition testimony to dispute the United States's characterization of both events.  *See* DE 50 at 8–10.  And in reply, the United States criticizes the legitimacy of that testimony and Plaintiff's failure to grapple with the summary judgment standard.  *See* DE 54 at 3–5.

Notably, Plaintiff submitted an administrative tort claim on April 17, 2023, that references the Count II assault.  *See* DE 43-7.  He also submitted two claims on August 30, 2023, and November 2, 2023, both of which reference the Count I and Count II assaults.  *See* DE 43-8; DE 43-9.  Seemingly, Plaintiff's claims were collectively denied on October 12, 2023, and November 29, 2023.  *See* DE 1-1 at 4–5.  The matter is now ripe for review.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* FED. R. CIV. P. 56(a)–(c).  In determining whether there exists a genuine dispute of material fact, the Court must consider all facts and draw all inferences in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009).  Further, the Court may not "weigh the evidence [or] determine the truth of the matter" in evaluating whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).  However, "only admissible evidence [i.e., a form admissible at trial] may be considered by the trial court in ruling on a motion

3

for summary judgment." *Rogers v. Lilly*, 292 F. App'x 423, 428 n.3 (6th Cir. 2008) (quoting *Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir. 2001)).

The moving party bears the initial burden of showing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986). If the moving party satisfies its burden, the burden shifts to the non-moving party to produce "specific facts" that suggest a "genuine issue" for trial. *See id.* at 2553. Notably, this is "an affirmative duty to direct the Court's attention to those specific portions of the record upon which [the non-moving party] seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). If the non-moving party cannot make a showing sufficient to establish the existence of an essential element of its case, then "Rule 56(c) mandates the entry of summary judgment." *Celotex*, 106 S. Ct. at 2552. A fact is "material" when the substantive law that underlies the dispute identifies it as such.[2] *See Anderson*, 106 S. Ct. at 2510. That is, "disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" when "there is sufficient evidence favoring the [non-moving] party for a jury to return a verdict for that party." *Id.* at 2511 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 88 S. Ct. 1575, 1592 (1968)).

Summary judgment is also proper when the non-moving party's pleading fails to state a claim upon which relief can be granted. *See Carter v. Ford Motor Co.*, 561 F.3d 562, 567 (6th Cir. 2009). Although the analysis of a pleading's sufficiency at the summary judgment stage

---

[2] While not in dispute, it is worth stating for completeness why Kentucky law is the applicable substantive law in this action. Through the FTCA, the United States can be held liable in tort "if a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 2672. Given that all of the purportedly culpable conduct in this case occurred in Kentucky, the United States is only liable to the extent that Kentucky law permits. *See generally* DE 20.

resembles the analysis of a Rule 12(b)(6) motion, the two inquiries are not identical. *See id.* at 567–68. Generally, by the time that a party moves for summary judgment, the liberal federal discovery rules have brought "the gravamen of the dispute . . . frankly into the open for inspection by the court." *See id.* at 568 (quoting *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 789 (6th Cir. 2005)). Accordingly, district courts need not apply the more flexible plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–69 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009), when assessing the legal sufficiency of a claim at the summary judgment stage. Instead, if the undisputed facts show that the plaintiff cannot establish a viable legal claim, summary judgment is warranted. *Cf. Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004).

### III.    ANALYSIS

Initially, the Court notes that it will not substantively consider the United States's inapt Rule 12(c) motion. The Court then addresses the United States's motion for summary judgment, concluding that relief is warranted as to Count I only.

### A.   The Court Will Not Consider the United States's Rule 12(c) Motion

The United States moves for judgment on the pleadings under Rule 12(c). *See* DE 43. In order to survive a Rule 12(c) motion, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)). As with a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Com. Money Ctr., Inc.*, 508 F.3d at 336).

5

While it is certainly correct that the Court may take into account "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[]" in deciding this motion, *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)), the United States has submitted nearly 150 pages of exhibits and premises the entirety of its argument on matters outside the pleadings and proof from discovery, *see* DE 43-1 at 6–17. Although the Court's decision under Rule 12(c) must "rest[] primarily upon the allegations of the complaint," the United States asks the Court to look far beyond the confines of that document. *See Barany-Snyder*, 539 F.3d at 332. Accordingly, and given that the United States stress tests when the first assault occurred and who committed the second assault, both topics beyond the mere scope of the pleadings, the Court will apply the summary judgment standard in deciding this motion. *See Chomic v. United States*, 377 F.3d 607, 616 (6th Cir. 2004) (affirming grant of summary judgment on FTCA claim for failure to comply with statute of limitations); *see also Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 201–03 (Ky. 2010) (reversing lower court and granting summary judgment based on non-moving party's "reli[ance] on little more than 'speculation and supposition' to support [it]s claims" (quoting *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006))). Per Rule 12(d), and because of the matters presented to the Court and not excluded, the United States's motion "must be treated as one for summary judgment under Rule 56."

### B. The United States's Motion for Summary Judgment Is Granted, in Part.

#### 1. Count I

First, the United States claims that it is entitled to summary judgment on Count I because the alleged December 2021 assault is, in fact, an incident that occurred on May 20, 2020. *See* DE 43-1 at 6–10. Thus, Count I is untimely on account of the FTCA's two-year statute of

limitations. *See* 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after . . . notice of final denial of the claim by the agency to which it was presented."). Plaintiff initiated an administrative tort claim, seemingly and for the first time in relation to the Count I assault, on August 30, 2023. *See* DE 43-7. For that reason, Plaintiff's claim would surely prove untimely if the assault, in reality, took place in May 2020. *See* DE 43-2 at 63–64.

The Court must now determine whether there is a genuine dispute of material fact as to when the Count I assault occurred. In support of its motion, the United States has submitted copious evidence indicating that the prison yard fight and related events took place on May 20, 2020, not December 21, 2021. Specifically, the United States has established that: (1) the BOP has no records of a prison yard fight occurring on or around December 2021, *see* DE 43-3 ¶ 4; (2) the BOP has no records indicating that Plaintiff was transferred to the special housing unit ("SHU") on or around December 2021, *see id.* ¶ 7, despite his testimony to the contrary, *see* DE 43-2 at 29–30; (3) the BOP has records describing a highly similar prison yard fight with the same unusual constellation of facts on May 20, 2020, *see* DE 43-3 ¶ 5; DE 43-4; (4) the BOP has six prior administrative remedy requests that were filed by Plaintiff between July 15, 2020, and January 26, 2021, recounting the same fight, the same instance of lying in goose feces, and the same alleged beating, *see* DE 43-3 ¶ 6; DE 43-5; DE 43-6; and (5) the BOP has records suggesting that Plaintiff was housed in the SHU from May 20, 2020, to June 16, 2020, *see* DE 43-3 ¶ 7; DE 43-10. Thomas agreed that he was in the SHU for thirty days after the incident, *see* DE 43-2 at 38, and he was only in the SHU, per the records, in mid-2020. Collectively, the United States has produced substantial contemporaneous evidence supporting its chronology.

7

In response, Plaintiff relies on his deposition testimony alone. *See* DE 50 at 8–9. Despite the United States's position, "self-serving statements can create a genuine dispute of material fact to be resolved at trial." *Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020). And indeed, "all statements in litigation are self-serving" to at least some degree; so long as a non-moving party's allegations are "supported by evidence at the summary judgment stage, they will be considered." *See Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019) (citing *Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017)). However, the Court must still determine whether Plaintiff's testimony, viewed in connection with the remainder of the evidentiary record, is sufficient to allow a reasonable finder of fact to decide for Plaintiff. *See Celotex Corp.*, 106 S. Ct. at 2552–53.

Here, Plaintiff's testimony is not discredited merely because it is self-serving. Rather, the Court finds the testimony, such as it is, inadequate because it is undermined by extensive documentary evidence—including Plaintiff's prior writings, institutional housing data, and other BOP records—and on account of Plaintiff's failure to produce any corroborative proof. *See generally* DE 43-3; DE 43-4; DE 43-5; DE 43-6. And while Plaintiff stands on his testimony alone, his statements regarding the timing of the incident were, at best, equivocal. *See* DE 43-2 at 44–45 (agreeing that the assault "[c]ould . . . have happened in May of 2020" and noting that he was unsure of the date of the incident). Nowhere in the deposition does Thomas affirmatively aver that the incident was from December 2021; his testimony is noncommittal, but the full record admits of only one view. Even considering that record as a whole and in Thomas's favor, no reasonable finder of fact could conclude that the incident described in Count I occurred in December 2021. Because Plaintiff did not present the administrative tort claim undergirding this action within two years of the incident occurring on May 20, 2020, Count I is barred by the statute of limitations.

### 2. Count II

Second, the United States contends that it is entitled to summary judgment on Count II because the alleged January 2022 assault was committed by Plaintiff's cellmate rather than BOP staff. *See* DE 43-1 at 10–16. As the United States correctly recognizes, the FTCA contains an intentional tort exception that preserves the United States's sovereign immunity. *See* DE 43-1 at 12 (citing 28 U.S.C. § 2680(h)). However, the FTCA does "extend[] the waiver of sovereign immunity to claims for six intentional torts, including assault and battery, based on the acts or omissions of investigative or law enforcement officers." *Id.* (internal quotation marks omitted) (quoting *Millbrook v. United States*, 133 S. Ct. 1441, 1443 (2013)). The parties do not dispute that BOP staff are law enforcement officers for the purposes of Count II, nor do they dispute that Plaintiff was assaulted. *See id.* The United States only disputes that a federal law enforcement committed the assault. *See id.* at 12–16.

Once again, it is the Court's task to determine whether there is a genuine dispute of material fact as to who committed the Count II assault. As with Count I, the United States has submitted extensive proof indicating that Plaintiff's cellmate was responsible. In particular, the United States has adduced: (1) BOP records indicating that Plaintiff was observed lying on the floor of his cell with significant injuries, that his cellmate was the only other person present, that his cellmate initially refused to submit to restraints, and that Plaintiff had to be carried to the hospital in a stretcher, *see* DE 43-3 ¶ 8; *see* DE 43-11; (2) recorded statements from Plaintiff's cellmate suggesting that he committed the assault, *see* DE 43-11 at 4 (noting that Plaintiff "went too far and crossed a line that should not be crossed" in post-assault interview); (3) an investigative report concluding that nobody else had entered Plaintiff's cell during the assault, *see id.* at 5; (4) disciplinary action taken against Plaintiff's cellmate, *see* DE 43-3 ¶ 8; (5) video surveillance

footage of Plaintiff being removed from his cell on a stretcher around 4:20 p.m., *see* DE 43-12; and (6) photographs depicting pools of blood in Plaintiff's cell and his cellmate's bloodied knuckles, *see* DE 43-13. Taken as a whole, the United States has offered significant proof to establish that Plaintiff's cellmate committed the Count II assault.

And as with Count I, Plaintiff only relies on his deposition testimony. *See* DE 50 at 9–10. However, Plaintiff's deposition testimony is far more certain with respect to the Count II assault. *See* DE 43-2 at 48–55. Although Plaintiff concedes his poor recollection of events and his lack of continuing contact with his cellmate, he testifies with relative certainty that approximately five BOP staff members removed him from his cell at around 2:30 a.m. on January 28, 2022, and assaulted him, rendering him unconscious. *See id.* at 45–50. And even though the objective video surveillance footage depicts Plaintiff being removed from his cell via stretcher at a later time, that footage does not "blatantly contradict" Plaintiff's version of events. *See Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). In fact, Plaintiff expressly contemplates that he was left "on the floor, in the facility" after he lost consciousness, only for BOP staff members to feign discovery of his body at a later time and provide him treatment. *See* DE 50 at 4–5. Conceivably, Plaintiff could have been beaten, returned to "the floor" of his cell, and "discovered" approximately 14 hours later. The point is that Thomas swore to his version, and the objective record (like the video) does not demonstrably refute what Thomas says. Per the deposition, Thomas specifically recalled the timing of the assault and his BOP assailants; he also claimed a guard's punch knocked him out and that, as to a cellmate assault, "that didn't happen." *See* DE 43-2 at 45–52.[3]

---

[3] This version has, for the reasons stated, wounded credibility. Further, in Plaintiff's first SF-95, *see* DE 43-7 (April 11, 2023), Thomas signed a form explicitly stating: "Complainant is unaware of any events surrounding his assault." But the Court does not judge credibility at the summary judgment stage, a matter reserved for the trier.

To be certain, the Court has concerns with Plaintiff's version of events. Contemporaneous BOP records strongly suggest that his cellmate committed—and even admitted to—the assault. *See* DE 43-3 ¶ 8; *see* DE 43-11 at 4–5. Additionally, the notion that Thomas was returned to his cell only for his cellmate to remain silent about his severely bloodied state for such a significant period of time on the 28th strains credulity. *See* DE 50 at 4–5. However, the Court simply lacks objective proof, at this time, indicating that Plaintiff was conscious between the hours of 2:30 a.m. and 4:20 p.m. Similarly, the Court lacks objective evidence showing that no other parties entered Plaintiff's cell between those hours. And finally, there is no sworn proof even from the cellmate. In the present case, and as to all of these clouding counterpoints, this lack of "objective (and indisputably authentic) evidence" is determinative. *See Gambrel v. Knox Cnty.*, 25 F.4th 391, 404 (6th Cir. 2022).

Plaintiff's sworn testimony, though exceedingly thin in comparison to the United States's proof, is enough to satisfy Plaintiff's minimal evidentiary burden at this stage. *See id.* (finding that summary judgment was improper based on a witness's single sworn statement, despite the fact that the officers' "testimony—not to mention the testimony of other bystanders—starkly conflict[ed] with the account [the witness] gave at his deposition" and even conflicted with the witness's prior statements); *see also Davis*, 951 F.3d at 750 (finding that summary judgment was improper despite the fact that the plaintiff's evidence consisted wholly of self-serving statements, stating that "nothing in the record leads [the court] to the conclusion that [the plaintiff's] claim that [the defendant] planted the drugs is demonstrably false or totally implausible"). For these reasons, the Court is unable to grant summary judgment. That is, the Court cannot say with certainty that no reasonable finder of fact could determine that BOP staff committed the assault described in Count II.

11

**IV.** **CONCLUSION**

Accordingly, the Court GRANTS DE 43 in part and finds that the United States is entitled to summary judgment on Count I only.

This the 13th day of July, 2026.

Signed By:

_Robert E. Wier_

United States District Judge